UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KESIA R. ANDERSON,

        Plaintiff,                      CIVIL ACTION NO. 12-13066

        v.                              DISTRICT JUDGE STEPHEN J. MURPHY III

                                        MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 12)

Plaintiff Kesia R. Anderson challenges the Commissioner of Social Security's ("Defendant") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 12). Plaintiff also responded to Defendant's motion (Dkt. No. 13). Judge Stephen J. Murphy III referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

## I.    RECOMMENDATION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED** and the Commissioner's findings be **AFFIRMED**.

**II.     DISCUSSION**

   *A.     Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts") (internal quotation marks omitted).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v.*

*McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.   REPORT

#### A.   *Administrative Proceedings*

Plaintiff applied for supplemental security income on September 5, 2008, alleging she became disabled on January 1, 2006 (Tr. 15).  After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ Donald G. D'Amato, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 15-24).  Plaintiff requested an Appeals Council review (Tr. 11).  On June 27, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-4).

#### B.   *ALJ Findings*

Plaintiff was 37 years old on her application date in September of 2008 (Tr. 23).  She has a college degree but no past relevant work (Tr. 23, 39).  The ALJ applied the five-step disability

analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her application date in 2008 (Tr. 17).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bipolar II disorder, depressed type; a history of episodic cocaine dependence; and alcohol dependence, in remission since November of 2010 (Tr. 17).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple, unskilled work with one-, two-, or three-step instructions. [Plaintiff] should only occasionally work in proximity to co-workers and supervisors, and cannot function as a member of a team. She should have direct contact with the public less than occasionally. She is limited to a low-stress environment, defined as having only occasional changes in [the] work setting.

(Tr. 18).

At step four, the ALJ found that Plaintiff did not have any past relevant work (Tr. 23).

At step five, the ALJ denied Plaintiff benefits, finding she could perform a significant number of jobs available in the economy (Tr. 23-24).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements

Plaintiff testified that she has mood swings and suffers from depression, anxiety and nervousness. Plaintiff feels like people are always "looking at [her] and saying stuff." On a

typical day, Plaintiff walks her daughter to school and watches television; she can only do light cleaning (Tr. 41).

### 2. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education and work experience. The individual is limited to simple, unskilled work with one, two or three-step instructions. She can only occasionally be in close proximity to co-workers and supervisors, and she can have direct contact with the public less than occasionally. The individual cannot function as a member of a team and can only have occasional changes in the work setting (Tr. 46). The VE testified that such an individual could perform work at the light, unskilled level as a file clerk, office machine operator and hand packer (Tr. 46). At the sedentary, unskilled level, the individual could perform work as a sorter/packer, production inspector and bench assembler (Tr. 47).

The individual would be precluded from work if, due to her mental impairments, she had to be off task at least one hour per eight hour day, or if she missed two work days per month (Tr. 47-48).

### D. *Plaintiff's Claims of Error*

#### 1. Treating Source Rule

Plaintiff argues that the ALJ erred by failing to give her treating physician's opinion controlling weight.

Plaintiff's treating physician, Dr. Sun Park, diagnosed her with bipolar II disorder, depressed; alcohol dependence; and cocaine dependence, episodic use.[1] He assessed a GAF score of 53 (Tr. 350, 352, 354, 356, 358, 360, 362, 364, 369, 391).[2]

The Sixth Circuit recently explained the weight an ALJ must afford medical sources:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
>
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

---

[1] At step two of the disability analysis, the ALJ found these diagnoses were "severe" impairments.

[2] The GAF score is

> a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

-7-

> Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 2013 WL 896255 at *9 (6th Cir. March 12, 2013).

Dr. Park's opinion that Plaintiff has a GAF score of 53 means she has moderate difficulty in social or occupational functioning (e.g., few friends and conflicts with peers or co-workers). *See Stevens v. Astrue*, 839 F.Supp.2d 939, 945 n.5 (S.D. Ohio 2012) (citing Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 34). The ALJ did not provide any reasons for not affording Dr. Park's opinion controlling weight; he did not discuss whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques or whether it was consistent with the other substantial evidence in the case record:

> Great weight is given to the opinion of [Plaintiff's] treating psychiatrist, Dr. Sun Park[.] He assigned [Plaintiff] a GAF score of 53 while she was engaging in alcohol and drug abuse and also after she had completed the substance abuse program. Dr. Park is a treating source who has a longitudinal treatment history with [Plaintiff]. The above remaining residual functional capacity takes into account factors that may exacerbate [Plaintiff's] moderate symptomatology.

(Tr. 23).

However, the ALJ's failure to comply with the regulations was harmless error, because the record establishes that he made findings consistent with Dr. Park's opinion. *See Wilson*, 378 F.3d at 547. The ALJ found that "[i]n social functioning, [Plaintiff] has moderate difficulties," and he accounted for Plaintiff's moderate difficulty in social or occupation functioning by limiting Plaintiff as follows: "only occasional[] work in proximity to co-workers and supervisors, and [Plaintiff] cannot function as a member of a team. She should have direct contact with the public less than occasionally" (Tr. 18). Plaintiff does not argue that the ALJ should have imposed additional limitations.

Moreover, GAF scores are of limited significance in disability cases. *See Kornecky*, 167 Fed. Appx. at 511 (holding that there is no controlling authority requiring the ALJ to put stock in a GAF score) (citations omitted). A GAF score merely represents the clinician's judgment as to the individual's overall level of functioning. *See DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 416 (6th Cir. 2006). "[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 Fed. Appx. at 511.

### 2. Hypothetical to the VE

Plaintiff next argues that the ALJ's hypothetical question to the VE did not encompass her moderate limitations in concentration, persistence or pace.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325 at *6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

There is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the

hypothetical individual to unskilled work or simple, routine tasks.[3] However, there is also authority that has found an ALJ formed an accurate hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[4] In analyzing the case law, this Magistrate Judge agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration,

---

[3] *See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09–14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did not incorporate [that] limitation ... into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10–10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[4] *See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7–8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible "); *Latare v. Comm'r of Soc. Sec.*, No. 08–13022, 2009 WL 1044836 at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace").

persistence or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557 at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step [five] of [the disability] sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled, routine work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325 at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09–11844, 2010 WL 3905375 at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace"). In a similar case, this evaluative process was explained as follows:

> Taken in isolation, the hypothetical limitations consisting of "[s]imple routine tasks in a low stress environment" and "minimal changes in the work place setting" might appear inadequate to account for "moderate" concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325 at *7; *see also Lewicki*, 2010 WL 3905375 at *3.

-11-

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence and pace, such that the claimant had limitations in performing at a consistent pace. *See Hess*, 2008 WL 2478325 at *7. However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis. *Id.* at *4. *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical. *Id.* at *8.

Here, Plaintiff does not state *why* the facts of her case require a more detailed hypothetical question. Plaintiff also ignores a key piece of evidence provided by Dr. Edward Czarnecki, the same state psychologist who diagnosed Plaintiff with moderate limitations in concentration, persistence or pace: Dr. Czarnecki diagnosed Plaintiff with moderate limitations in concentration, persistence or pace, but he also concluded that Plaintiff's mental limitations *would not* prohibit her from performing simple tasks. Consistent with Dr. Czarnecki's opinion, the hypothetical question's mental limitations consisted of simple, unskilled work with one, two or three-step instructions.[5] "Having adopted [Dr. Czarnecki's] discrete finding that Plaintiff experienced moderate limitations, the ALJ also reasonably adopted [Dr. Czarnecki's] more

---

[5]Plaintiff also argues that a job with *three-step* instructions is not simple or unskilled and cannot be performed by someone who is moderately limited in her ability to understand, remember and carry out *detailed* instructions. This Magistrate Judge disagrees: a three-step instruction is simple, not detailed. *See Layne v. Comm'r of Soc. Sec.*, No. 08-12552, 2009 WL 2496474 at *3 (E.D. Mich. Aug. 17, 2009) (substantial evidence supported ALJ's finding that claimant with moderate deficiencies in concentration, persistence, and pace could perform *simple, unskilled work of "1-2-3-step operations"*); *Berkowski v. Comm'r of Soc. Sec.*, 652 F.Supp.2d 846, 860 (E.D. Mich. 2009) (ALJ's limitation of claimant, who had moderate deficiencies in concentration, persistence, and pace, to "*simple, unskilled work with one, two or three step instructions*" was sufficient) (emphasis added).

detailed conclusion as to the Plaintiff's functional capacity for work, forming the basis for the hypothetical question and RFC." *Id.*

## IV. CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED** and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

Dated: April 30, 2013

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

-14-

CIVIL ACTION NO. 12-13066

<u>*Certificate of Service*</u>

    I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, April 30, 2013, by electronic and/or ordinary mail.

<u>*s/Shawntel Jackson for Eddrey Butts*</u>
*Case Manager for Magistrate Judge Randon*