UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KESIA ANDERSON,

        Plaintiff,                       Case No. 12-cv-13066

v.                                  HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**ORDER ADOPTING**
**REPORT AND RECOMMENDATION**
(document no. 14), **DENYING PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT** (document no. 8), **AND GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (document no. 12)

The Social Security Administration ("SSA") denied Plaintiff and claimant Kesia Anderson's application for Supplemental Security Income in a decision issued by Administrative Law Judge ("ALJ") Donald D'Amato on February 8, 2011. After the SSA Appeals Council declined to review the decision, Anderson appealed to this Court. The Court referred the matter to a magistrate judge, and the parties filed cross motions for summary judgment. On April 30, 2013, the Magistrate Judge issued a Report and Recommendation ("Report") suggesting denial of Anderson's motion and grant of the Commissioner for Social Security's ("Commissioner") motion. Report, ECF No. 14.

Anderson filed two timely objections to the Report. She argues the Report incorrectly found the ALJ's failure to apply the treating physician rule was harmless error; and incorrectly concluded the ALJ's hypothetical to the vocational expert was accurate. Objection at 2-4, ECF No. 15.

Civil Rule 72 does not require the Court to hold a hearing when reviewing a magistrate

judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL 1622897 (E.D. Mich. 2012). After examining the record and considering Anderson's objections de novo, the Court concludes that her objections do not have merit. Accordingly, the Court will adopt the Report, grant the Commissioner's motion for summary judgment, deny Anderson's motion for summary judgment, and dismiss the case.

## STANDARD OF REVIEW

Reports and recommendations for dispositive motions issued by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge referring the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Here, Anderson objected to two findings made by the Magistrate Judge as to the ALJ's decision. Those findings will be reviewed de novo by the Court.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's

finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## BACKGROUND

Plaintiff Kesia Anderson was thirty-seven years old at the date of her application for benefits. Administrative Record ("A.R.") at 23, ECF No. 5. She has a college degree, but no relevant work history. A.R. at 23, 39. She is single, with children. A.R. at 41, 141. In 2002, Anderson was hospitalized and first diagnosed with bipolar disorder. A.R. at 19. Between 2002 and the present, she has been occasionally hospitalized, with diagnoses of depressive disorders, and alcohol and substance abuse. *See* A.R. at 16-23. In 2006 and 2007, she was treated several times by the Hegira Programs rehabilitation program, and again diagnosed with varying degrees of functionality and depressive disorders. A.R. at 20-21. She has also been in rehabilitation for substance abuse. A.R. at 40.

On September 5, 2008, Anderson first filed her application for supplemental security income, claiming disability as a result of her bipolar and depressive disorders. A.R. at 19. She claimed a disability onset date of January 1, 2006. A.R. at 15. After filing her application, Anderson underwent a consultative psychiatric examination at the request of the state agency. A.R. at 21-22. On February 2, 2009, the Commissioner denied her initial application, and she subsequently requested a hearing before an ALJ. A.R. at 50-54. Beginning in March, 2010, Anderson enrolled in a treatment program with Community Care Services. A.R. at 22. She subsequently enrolled in a substance abuse program later that

year, and underwent several medical evaluations during her stay. A.R. at 22.

On January 25, 2011, ALJ D'Amato held a hearing in Livonia, Michigan on the matter. Anderson appeared in person with counsel, and Melody Henry, a vocational expert, testified in person. On February 8, 2011, the ALJ issued his final report denying Hudson's application for benefits. Overall, the ALJ concluded that she was not disabled, and retained the capacity to engage in a full range of work at all exertional levels, although with non-exertional limitations regarding her ability to work with co-workers, teams, the public, and limits on how many instructions she could process. A.R. at 18. On June 27, 2012, the Social Security Appeals Council denied her request for review. A.R. at 1.

I.    The ALJ's Decision

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found Anderson had not engaged in substantial gainful activity since the application date of September 5, 2008. A.R. at 17.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R.

4

§ 404.1520(c). Here, the ALJ found Anderson suffered from three severe impairments: bipolar II disorder, depressive; a history of episodic cocaine dependence; and alcohol dependence in remission since November 2010. A.R. at 17. The ALJ found these impairment caused "more than a minimal effect" on Anderson's ability to work. A.R. at 17.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found Anderson did not have an impairment or combination of impairments that met or equaled one of the "affective disorder" listings found in Appendix 1, section 12.04. A.R. at 17.

To meet or equal a 12.04 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria. Although the ALJ implicitly determined Anderson met certain paragraph A criteria, he also concluded she did not meet the criteria of paragraph B, which requires showing at least two of the following symptoms:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, ¶ B. The ALJ found that Anderson only had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and maintaining concentration; and although she had experienced two episodes of decompensation of extended duration, she had not experienced "repeated" episodes. A.R. at 17-18.

Listing 12.04 may also be met if the claimant alternatively meets "paragraph C"

critieria. The ALJ found that Anderson did not meet the criteria of paragraph C, which requires a finding of:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or
> >
> > 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> >
> > 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04, ¶ C. Here, the ALJ found the medical record did not establish a chronic affective disorder of at least two years that caused more than a minimal limitation of her ability to do basic work activities; or in combination with the remaining three factors. A.R. at 18.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show he cannot engage in work he has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

The ALJ concluded Anderson had the residual functional capacity to perform a "full range of work at all exertional levels," but included the non-exertional limitations that:

Anderson be limited to simple, unskilled work with one, two, or three step instructions; she only occasionally work with co-workers or supervisors, and never as a team member; that she have less than occasional direct contact with the public; and work in a low-stress environment with only occasional changes in work setting. A.R. at 18.

In making the determination of mental limitations, the ALJ concluded that her underlying medical impairments of bipolar and depressive disorders were capable of causing her alleged symptoms, but found her statements concerning the intensity, persistence, and limiting effect not credible as inconsistent with his residual functional capacity assessment. A.R. at 19. In reaching this conclusion, the ALJ considered a wide variety of evidentiary sources, including Anderson's testimony, the examination by Oakwood Heritage Hospital in 2002 and 2007, a counselor at the Northeast Guidance Center, the records and assessment of her multiple attendances of the Hegira Programs rehabilitation program in 2006 and 2007, the psychiatric examination at the behest of the state agency, and the treatment records of her time at Community Care Services, including her treating physician, Dr. Sun Park. A.R. at 19-23.

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). The ALJ found that considering her age, education, and work experience, Anderson did not have any past relevant work. A.R. at 23. The ALJ also concluded that Anderson's ability to work was compromised solely by non-exertional limitations. Considering this background, and after taking the testimony of the vocational expert, the ALJ found Anderson was qualified to work in such tasks as file clerk, office machine operator, handpacker, sorter/packer, production

inspector, or bench assembler. Collectively, several thousand of these jobs existed in the State of Michigan. A.R. at 24. The ALJ then concluded that Anderson was "not disabled" as defined by the Social Security Act. *Id.*

The Magistrate Judge's Report recommended granting summary judgment to the Commissioner, finding that the ALJ's decision was supported by substantial evidence. Report at 13. Pursuant to 28 U.S.C. § 636(b)(1), on May 14, 2013, Anderson filed an objection to the report; on May 29, 2013, the Commissioner filed a response.

## DISCUSSION

I.   Treating Source Rule

Anderson's first objection to the Report questions the weight the ALJ assigned to Dr. Park. Anderson argues the Magistrate Judge should have concluded that the ALJ's failure to assign controlling weight to Dr. Park's decision was not "harmless error," and violated the treating physician rule.

Dr. Park completed several diagnoses and meetings of Anderson between 2010 and 2011. Dr. Park diagnosed Anderson with bipolar II disorder, depression, alcohol dependence, and cocaine dependence, and assigned her a Global Assessment Functioning ("GAF") score of 53.[1] A.R. at 369-91. The ALJ considered his opinions, and noted that Dr. Park was a longitudinal treating source, who treated Anderson both during drug abuse and after a treatment program.  The ALJ gave great, but not controlling, weight to Dr. Park's opinion. A.R. at 23. It is true the ALJ did not give a reason for not assigning

---

[1] "Global Assessment of Functioning represents the examiner's judgment of the individual's overall level of psychological functioning." *Doud v. Comm'r of Soc. Sec.*, 314 F. Supp. 2d 671, 674 n.2 (E.D. Mich. 2003) (quoting American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed.2000)).

8

Dr. Park controlling weight.

The Magistrate Judge found that although it was error for the ALJ not to explain his reasoning for not assigning Dr. Park's opinion controlling weight under 20 C.F.R § 404.1527, the error was harmless because "the record establishes that [the ALJ] made findings consistent with Dr. Park's opinion." Report at 8.

A.  Legal Standards

Title 20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical opinion evidence. The ALJ must adhere to these standards as a matter of due process. *Wilson*, 378 F.3d at 544. An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544.

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence."[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id.* at 545. But this error is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion

9

of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 547) (internal citation omitted). But the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544).

B.   <u>Dr. Park's Evaulations</u>

Dr. Sun Park is a physician for Community Care Services. He examined Anderson several times during Anderson's treatment at the center. In his initial psychiatric evaluation of April 6, 2010, Dr. Park noted her appearance was appropriate and she maintained a cooperative attitude. Her speech was generally normal, she did not respond to "internal stimuli" such as hallucinations or delusions, and her thought processes were logical and organized. A.R. at 367. Her mood was depressed and anxious and her judgment was fair, but her cognition was "fully oriented" and her insight and memory were good. A.R. at 368. Dr. Park diagnosed her with bipolar II disorder, depressed; as well as alcohol dependent and cocaine episodic dependent. His diagnostic summary stated she had a "history of mood swings between hypomania and depression. Currently depressed without suicidal ideation." He also noted she had problems related to social environment, and economic problems. He determined her GAF score was 53. A.R at 369. He concluded that her prognosis was guarded, and recommended certain drug treatments.

Dr. Park continued to examine Anderson for the next several months. Every several weeks, he examined her as part of a medication review. On May 4, 2010, Dr. Park noted

10

she appeared pleasant, with mild mood swings, and felt less depressed. He repeated verbatim his diagnostic summary, diagnosis, and GAF score of 53. A.R. at 363-64.

On June 8, 2010, Dr. Park noted she appeared pleasant, stated she was "doing alright," denied major mood swings, and slept inconsistently. He repeated verbatim his diagnostic summary, diagnosis, and GAF score of 53. A.R. at 357-58.

On August 24, 2010, Dr. Park noted she was "doing okay," "[felt] a little down," and was "trying to get out more." He noted she appeared pleasant, although reported mild mood swings, and discussed altering her medication for her sleep and depression problems. He repeated verbatim his diagnostic summary, diagnosis, and GAF score of 53. A.R. at 357-58.

On October 5, 2010, Dr. Park noted she was "going OK, not much depressed," and that she appeared pleasant and smiled often, with no major mood swings reported. She stated she was "cutting down on alcohol and cocaine and [] is planning on going to go through substance programs soon." She reported her prescription of Trazodone helped her sleep with no perceived side effects, and that she was happy with her current medical regime. He repeated verbatim his diagnostic summary, diagnosis, and GAF score of 53. A.R. at 349-50.

Dr. Park conducted his final medication review of Anderson on January 4, 2011. Dr. Park again diagnosed her with bipolar II disorder, and depressive disorder, as well as alcohol dependence and cocaine episodic dependence. A.R. at 391. He repeated verbatim his diagnostic summary, diagnosis, and GAF score of 53. A.R at 391.

C. Analysis

After examining the record, the Court finds that failure to assign Dr. Park's opinions

11

controlling weight is harmless error because the ALJ's conclusions are consistent with Dr. Park's opinion.

The Court first notes Dr. Park's opinions remained consistent through his longitudinal treatment of Anderson between April 2010 and January 2011. He consistently summarized her diagnosis as one with a "history of mood swings between hypomania and depression," and she was "currently depressed without suicidal Ideation"; he consistently diagnosed her with with bipolar II disorder, depressed; as well as alcohol dependent and cocaine episodic dependent; and he consistently assessed her GAF score as 53. *See* A.R. at 350-91.

Anderson argues that her GAF score of 53 indicated more serious problems than the ALJ included in his residual functional capacity assessment. She also argues Dr. Park's diagnosis that Anderson had "problems concentrating and mood swings," A.R. at 368, was ignored, and that the ALJ should have included these limitations when formulating the residual functional capacity. Because Dr. Park's opinion as a treating physician was ignored, she argues, and because this diagnosis is inconsistent with the ALJ's formulation, this constitutes error.

With respect to the GAF score of 53, the ALJ's formulation of Anderson's work capabilities and limitations is consistent with Dr. Park's opinion. First, with respect to the GAF score, it is well settled that a GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006). An "ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)

Here, Anderson's score of 53 generally reflected "the opinion that [a claimant] has

moderate symptoms or moderate impairment of social or occupational functioning." *Kornecky*, 167 F. App'x at 511. Along the same lines, Dr. Park also consistently noted Anderson had "problem[s] related to social environment." *See, e.g.*, A.R. at 369. The ALJ, consistent with Dr. Park's opinions, concluded that Anderson had "moderate difficulties in maintaining social functioning and maintaining concentration." A.R. at 17-18. Consequently, the ALJ set non-exertional limitations for Anderson, finding she should be be limited to simple, unskilled work with one, two, or three step instructions; she only occasionally work with co-workers or supervisors, and never as a team member; that she have less than occasional direct contact with the public; and work in a low-stress environment with only occasional changes in work setting. A.R. at 18. These non-exertional limitations are consistent with moderate difficulties maintaining social functioning and maintaining concentration. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (A "GAF in the high 40s to mid 50s . . . would not preclude [a claimant] from having the mental capacity to hold at least some jobs in the national economy.").

With respect to Dr. Park's opinion that Anderson had "trouble concentrating and sleeping," the ALJ's consideration of this in the opinion was consistent. Dr. Park's opinion, made at the outset of her treatment at Community Care Services, did not include any discussion as to whether or how it could impair her ability to work. And her concentration problem was not noted in any of his subsequent reviews. Moreover, the ALJ did not ignore the comment, but specifically noted that Anderson had "moderate difficulties" with concentration, persistence, or pace. Thus, the ALJ's opinion remained consistent with this diagnosis.

Because the ALJ's findings and residual functional capacity assessment are not

inconsistent with Dr. Park's opinions as a treating physician, the Court finds the ALJ's failure to explain the weight assigned to Dr. Park's opinion harmless error.

II.   Vocational Expert Hypothetical

Anderson's second objection to the Report revolves around the Magistrate Judge's conclusion that the ALJ presented an accurate hypothetical to the vocational expert when he failed to include express limitations about Anderson's moderate concentration, persistence, and pace problems. Anderson submits that, contrary to the Magistrate Judge's conclusion that Anderson put forth no justification for why the hypothetical should be different, *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), stands for the proposition that when an ALJ finds a moderate concentration, persistence, and pace limitation, that information should be specifically included in the hypothetical, which the ALJ did not do here.

At the hearing, the ALJ formulated his hypothetical in terms of asking whether jobs existed for an individual of Anderson's age, education, and past work experience, along with the specific limitations that she "requires work which is simple, unskilled with one, two or three step instructions, occasioning close proximity to co-workers and supervisors but the individual cannot function as a member of a team, less than occasionally in direct contact with the public and a low-stress environment defined as having only occasional changes in work setting." A.R. at 46.

Although the Magistrate Judge agreed that an ALJ's hypothetical that does not include direct references to moderate concentration limitations could potentially be inaccurate, he also noted that "there is no bright-line rule requiring remand" if the limitation is not included. Rather, a court must look at the record as a whole, and the test is whether substantial

14

evidence supports the hypothetical the ALJ did put forward. *Id.* The Magistrate Judge concluded the ALJ did not err in formulating the hypothetical.

A. Legal Standard

A hypothetical question and answer is substantive evidence if it is an accurate assessment of the individual's physical and mental impairments. *Mitchell v. Astrue*, 256 F.App'x 770, 772 (6th Cir. 2007). The question is not whether the ALJ presented the entire medical record to the vocational expert, but whether the ALJ presented an accurate description of the claimant's functional capacity and limitations to do work. The ALJ is not required to present the vocational expert with medical records, specific medical impairments, or testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004). But the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (quoting *Webb*, 368 F.3d at 633). It is well understood that "the ALJ — not a physician — ultimately determines the claimant's [residual functional capacity]." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). When formulating a hypothetical, "the ALJ is required to incorporate only those limitations that he accepts as credible." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

B. Analysis

Anderson primarily asserts that *Edwards v. Barnhart* requires as a matter of law that the ALJ include the moderate concentration, persistence, and pace problems in the hypothetical. She notes this limitation is particularly relevant in light of the vocational expert's testimony that Anderson is incapable of finding a job if she is off task for at least one hour per eight hour workday.

15

But *Edwards* does not establish a firm rule requiring an ALJ to include any certain specific limitations if a plaintiff has been assessed with moderate limitations in concentration, persistence, or pace. The *Edwards* court specifically found that "in the present case . . . the ALJ's limitations . . are not sufficient, and do not fully convey Plaintiff's limitations in concentration." *Edwards*, 383 F. Supp. 2d at 930. Notably, the court included the disclaimer "in the present case" — denoting that reviewing the medical record unique to the plaintiff in that case, the court concluded the hypothetical was inaccurate. *See, e.g.*, *Brewer v. Comm'r of Soc. Sec.*, CIV.A. 10-14039, 2011 WL 7546792, *11 (E.D. Mich. Dec. 11, 2011), *report and recommendation adopted*, 10-14039, 2012 WL 899341 (E.D. Mich. Mar. 16, 2012) ("*Edwards*, however, is distinguishable from the present case since, here, substantial evidence supports the ALJ's findings that Plaintiff can perform "simple, low-stress tasks specified in the RFC" despite a "moderate" CPP rating.").[2]

An ALJ "is not required to include the phrase moderate deficiencies in concentration, persistence, or pace or other talismatic language in the hypothetical." *Chmura v. Comm'r of Soc. Sec.*, CIV.A. 11-13244, 2012 WL 4486004, *6 (E.D. Mich. Aug. 28, 2012) *report and recommendation adopted*, 11-13244, 2012 WL 4475517 (E.D. Mich. Sept. 27, 2012) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (internal quotation marks omitted). This would include language about the severity of an individual's concentration, persistence, and pace. An ALJ's hypothetical must only present an accurate portrayal of the claimant's ability to work. *Webb*, 368 F.3d at 631.

---

[2] The Court acknowledges the question of *Edward's* precedential value, but does not find it dispositive. *See generally McNamara v. Comm'r of Soc. Sec.*, CIV.A. 11-10331, 2011 WL 7025855, *12 (E.D. Mich. Dec. 1, 2011), *report and recommendation adopted*, 11-10331, 2012 WL 113541 (E.D. Mich. Jan. 13, 2012).

After an examination of the record, the Court finds that substantial evidence exists to support the ALJ's functional capacity assessment. The ALJ's conclusion that Anderson's problems concentrating, persisting, or pacing, did not require additional limitations beyond what he had already found include: the April 21, 2006 therapist reported her orientation was "x4" and she was able to maintain focus (exhibit 2F); her treatment at Hegira discussing that her concentration was adequate and she was able to maintain focus despite a GAF of 45 at the time (exhibit 2F); the fact her GAF score since 2008 has been consistently above 50, which is generally consistent with the ability to work; Dr. Park's assessment of a GAF of 53; and Dr. Czarnecki's opinion that despite mild and moderate limitations of concentration and functioning, she retains the mental capacity to sustain an independent routine of simple tasks (exhibit 8F). *See generally* A.R. at 20-23. These records, taken in whole, are substantial support for the ALJ's conclusion and are "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 784 (6th Cir. 2009).

The ALJ did not ignore Anderson's concentration limitations altogether; he did specifically note this problem was accounted for in his limitation she only work in jobs with one, two, and three step instructions; and possibly also the limitation of a low-stress work environment. A.R. at 23. Although Anderson points to her GAF score of 53 as evidence her hypothetical should have included a more pronounced concentration limitation, the GAF score alone  "may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511. And although Anderson argues the ALJ ignored the fact that if her concentration problems interrupted her work for more than one hour per eight our work day, there would be no jobs in the national economy for her, the

17

ALJ did not actually ignore this. Rather, he concluded that particular hypothetical would be an inaccurate portrayal of Anderson's limitations based on the evidence. Ultimately, Anderson has not pointed to evidence in the record which suggests the ALJ's decision was not supported by substantial evidence.

The ALJ's decision not to include more restrictive limitations with respect to Anderson's moderate impairment of concentration is supported by substantial evidence. Consequently, the ALJ's residual functional capacity assessment, and the hypothetical to the vocational expert, are accurate. Accordingly, the Court will not overturn the findings.

## CONCLUSION

Anderson's objections dispute the weight and limitations the ALJ accorded her problems with concentration, persistence, and pace. Substantial evidence supported the ALJ's decision to note she had moderate limitations of concentration, persistence, and pace; and his decision as to how much this affected her ability to work. There is no legal rule requiring otherwise. The Court will not overturn his findings, and will grant the Commissioner's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Magistrate Judge's Report (document no. 14) is **ADOPTED** over Anderson's objections.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (document no. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (document no. 12) is **GRANTED**.

**SO ORDERED**.

18

                              s/Stephen J. Murphy, III
                              STEPHEN J. MURPHY, III
                              United States District Judge

Dated: June 28, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on June 28, 2013, by electronic and/or ordinary mail.

                              s/Carol Cohron
                              Case Manager